In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00283-CV
_____

IN THE INTEREST OF G.L.K., M.R.T., AND E.A.M.

On Appeal from the 418th District Court
Montgomery County, Texas
Trial Cause No. 12-10-10853 CV

MEMORANDUM OPINION

The trial court terminated the mother's (appellant) parental rights to G.L.K., M.R.T., and E.A.M. In this accelerated appeal, appellant presents four issues challenging the legal and factual sufficiency of the evidence to support termination. *See* Tex. Fam. Code Ann. § 263.405 (West 2014). We affirm the trial court's judgment.

Background

On August 11, 2012, Deputy Brad Kennelly first encountered appellant when she reported her brother missing. Kennelly testified that appellant was sweating and shaking, which caused Kennelly initially to suspect that appellant

might be under the influence of a drug or other intoxicant; however, appellant calmed down once an ambulance arrived. On August 25, Kennelly conducted a welfare check at appellant's home. Kennelly testified that the children were clean and healthy, appellant was lucid and normal, and the house was "lived in."

Caseworker Jennifer Leteff testified that on September 23, the Department received allegations that appellant was abusing medication and distributing drugs, four-year-old E.A.M. had accused M.R.T. of molestation, and appellant was leaving the children home alone. According to Victoria Matthews, appellant's neighbor and the children's babysitter, appellant often left the children alone, and the two older children stayed home from school so E.A.M. would not be alone. Appellant testified that she regretted leaving the children alone and denied that she frequently did so. She testified that her brother lived with her and was always home when she left the children. Regarding E.A.M.'s accusations against M.R.T., appellant told Leteff and Cynthia Mandel, a court-appointed advocate, that the family attended counseling to address the issue. Appellant testified that she and the children attended counseling until she could no longer afford the sessions. Appellant also told Mandel and Amber Evans, a conservatorship caseworker, that she clothed E.A.M. in one-piece outfits to prevent further molestation. Regarding

the drug allegations, Leteff testified that appellant denied abusing drugs. The Department ruled out medical neglect and the case was dismissed.

Kennelly went to appellant's home a third time when P.S., the man who was renting the home for appellant, accused E.A.M.'s father of fraud. P.S. expressed concern about drug use occurring in the home. On October 7, Kennelly stopped appellant's vehicle for a tail light violation. E.A.M.'s father was driving and appellant was the passenger. E.A.M.'s father was arrested on a warrant related to P.S.'s fraud claim. Although Kennelly smelled marihuana in the vehicle, he testified that the amount of marihuana seeds and stems found inside the vehicle did not constitute a usable amount.

On October 11, the Department learned that M.R.T. and E.A.M. had been left home alone. Appellant testified that she left the children because she had a work appointment that she was unable to cancel and she assumed the children would go to Matthews's home. Kennelly testified that appellant was arrested for child abandonment and endangerment and submitted to a field drug test, the results of which concerned Leteff. The Department removed the children on October 12. On October 15, officers responded to a disturbance at appellant's home. The disturbance was called in by the alleged victim, a man neighbors suspected to be a drug dealer; however Kennelly was unable to confirm that suspicion. On

November 18, after appellant vacated the home, police were alerted to a syringe found in the home.

Leteff testified that the Department had investigated appellant on three previous occasions, one of which resulted in removal. According to Leteff, substance abuse was a main issue in the removal case, but the children were eventually returned to appellant. Appellant admitted that she was previously arrested for drug possession and the Department became involved. She enrolled in and completed the Success Through Addiction Recovery program, the children were returned, and the case was dismissed. Leteff testified that a 2011 case for negligent supervision was ruled out.

Mandel testified that appellant admitted abusing prescription medication and self-medicating with cocaine and Lorcet. Appellant testified that she used up to thirty prescription pills per day, and began using methamphetamine in June 2012. Evans testified that appellant told her that when she is not on her medication, she self medicates with methamphetamine. Appellant told Mandel that she once took thirty Lorcet and passed out at a table in a restaurant with her children present. Matthews testified that G.L.K. once gave appellant some money from a garage sale, and he told Matthews that appellant probably bought drugs with the money. According to Mandel, appellant also carried a knife, which she contended was for

4

her protection and which she admitted taking to visitation with the children. Appellant told Mandel that she feared for her life. One evening, appellant contacted Mandel because she believed people were using electronics to try to control her. Appellant also texted Mandel a photo of a gun and claimed she no longer wanted to live. J.K., appellant's father, recalled instances when he was contacted about appellant's out-of-control behavior. Appellant testified that she was never suicidal or homicidal.

In April 2013, appellant was being transferred to a psychiatric facility but was arrested when methamphetamine was found in her pocket. Appellant testified that she had not been using methamphetamine and did not know the bag was in her pocket. She was arrested and released on bond. J.K. testified that appellant was subsequently arrested for failure to stay in contact with her bail bondsman. Evans testified that appellant is on probation for drug possession and child endangerment and has been arrested three or four times since the case began. Appellant testified that she went to jail on two occasions for failing to check in with her probation officer. She also admitted recently being charged with criminal mischief for an offense that occurred during an altercation with E.A.M.'s father in 2013.

Evans testified that appellant lied about performing services with the Houston Council, a drug and alcohol prevention and support services provider, but

5

did participate in outpatient therapy. She also testified that appellant never tested positive for methamphetamine. Mandel testified that E.A.M.'s father claimed to have taught appellant how to cheat drug tests and that appellant admitted that she knows how to cheat a drug test, but has never done so. However, mother also testified that she would not fake a drug test and was not taught how to mask a drug test.

Mandel testified that appellant had lived in seven different places over the past year and a half. Appellant testified that she lived at the Value Place for approximately five months and had qualified for a two-bedroom apartment and paid a deposit. She testified that she can afford the monthly rent and is prepared to sign a thirteen-month lease. She admitted that the Value Place may not be a "great environment[,]" but testified that it is stable and she has lived there for five months and paid her rent every week.

Susan Lee, appellant's former counselor, testified that appellant was initially confused and in a lot of pain, but could communicate succinctly. Appellant told Lee that she had been physically and sexually abused, has a history of substance abuse, had used meth, and had been arrested for possession of methamphetamine. During counseling, Lee saw appellant become more responsible and independent. Lee testified that appellant did not exhibit behavior that led Lee to believe that

6

appellant was on any illegal substance. Lee believed appellant had begun to understand how the past had impacted her poor decisions, grieved the impact of her decisions on the children, and wanted the best for the children. She testified that appellant is in the initial stages of recovery and self-growth, had made significant progress in a short time, and that behavioral therapy is a long process. Lee believed that appellant is dedicated and capable of doing the necessary work to complete the process.

Dr. James Wright, a psychiatrist, testified that he diagnosed appellant with bipolar II disorder and attention deficit hyperactivity disorder when she sought his help for depression, anxiety, and difficulty concentrating. Appellant testified that she takes Adderall and Latuda daily. Appellant testified that she is taking her medication properly and no longer has issues with self-medication. Wright believed that appellant was taking her medication appropriately and is stable. Evans expressed concern that appellant, who struggles with methamphetamine usage, takes medication containing amphetamines.

J.K. testified that appellant is a new person and is following through with her promises. He testified that appellant found a job, paid her rent, and was promoted to manager. R.G., appellant's Alcoholics Anonymous sponsor, testified that appellant is in the fourth step of the twelve-step program and has been sober for

eight months. She acknowledged that appellant had to restart the program once or twice, but she believed appellant would succeed. She testified that appellant has grown physically, mentally, and spiritually, and is taking control of her addiction and her life. Appellant testified that she last smoked marihuana in 2013, has been sober since September 2013, and no longer wanted to change her feelings with mind-altering substances. J.K. testified that appellant felt guilty and sad over the loss of the children. He admitted that appellant has down days, but that he was helping her through it.

Appellant explained that, after losing the children, she lived with a man and the relationship was detrimental to her participation in services ordered by the Department. Appellant testified that she struggled mentally and found it difficult to maintain a positive attitude. She testified that she is now performing community service, participating in weekly counseling, and attends classes in parenting, abuse recovery and anger management. She also attends Alcoholics Anonymous meetings. Appellant testified that she has worked in a salon for six months. Mandel testified that appellant was participating in services and taking steps to improve her situation and life. Evans testified that appellant had been seeing a counselor, attending visitation with the children, and participating in parenting classes. During the visits Evans supervised, was not impaired and she demonstrated a good and

loving relationship with the children. Evans testified that appellant had shown through her employment that she can provide for and support the children.

Regarding the children, Mandel testified that M.R.T. initially suffered from bed wetting and defecating on himself. Mandel later learned that appellant once had a relationship with a child sex offender, but appellant claimed the offender would never touch her children. Evans testified that M.R.T. was hospitalized because of erratic behavior and suicidal ideation. Mandel testified that M.R.T. is now articulate, nice, smart, and responsible. She testified that G.L.K. was once reserved, serious, and struggled to make friends, but is now funny, talkative, and outgoing. Matthews testified that E.A.M. had sucked her thumb and talked like a baby at four years old. According to Evans and Mandel, E.A.M. had speech problems, but is doing well, her speech is improving, and she likes being with her aunt. Mandel testified that the children's current placements had helped them with reading, writing, and emotional stability. Appellant testified that the children have adapted well and are doing great. She wanted the children to stay together and believed her aunt in Michigan would provide a good home for all three children. Evans, however, testified that it was not possible to have all three children placed together.

Evans explained that the Department's plan for M.R.T. and G.L.K. would be adoption and that if all approval processes are completed, they will live with their aunt in Michigan. Evans admitted that G.L.K. and M.R.T. had voiced a desire to have a relationship with appellant and that not having a relationship could be devastating to the two children. She believed it would be in their best interest to have contact with appellant and that contact is permissible with a relative adoption. G.L.K. and M.R.T. were excited when Mandel mentioned the possibility of moving to Michigan to live with their aunt, but wanted to be able to maintain contact with appellant. Mandel believed the aunt in Michigan would allow appellant to visit with and contact M.R.T. and G.L.K.

Evans testified that E.A.M. had been placed with her paternal aunt and the Department desired that she be adopted by the aunt. E.A.M. had also expressed a desire to see appellant. E.A.M. told Mandel that she is comfortable, has friends, and wants to stay with her aunt. Evans believed the aunt could provide long term stable care. Appellant testified that E.A.M.'s placement is meeting her physical needs and is stable.

J.K. believed it would be a mistake to terminate appellant's rights because appellant loves the children, is aware of her mistakes, and wants the children. He believed it is in the children's best interest to be with appellant, but he admitted

that she was unable to take the children at the time of trial. Matthews testified that the children love appellant. She acknowledged that appellant's actions had been neglectful, but she believed that appellant should get another chance as long as she is not using drugs. She believed a safe home where all three children could be together was best for them. Lee testified that appellant cares deeply for the children and realizes that their safety and welfare is a priority. She believed appellant is on the road to being able to care for the children and she saw no reason for termination. Lee approved of a situation in which the children are placed with relatives and able to stay in contact with appellant. R.G. testified that appellant talks with the children and teaches them, is a good mother, does not yell at the children, and has instilled values. She testified that the children are the most important people in appellant's life and the children feel the same about appellant. She believed the children would be devastated if appellant's rights are terminated.

Appellant testified that the children need her, she can do better because she has improved mentally, physically, and spiritually, and she can provide the children with a safe and stable environment. She recognized her addiction, wrongdoings, and faults, and she testified that she has no concern about relapsing. She testified that the children need to know where they came from and it would be detrimental for her rights to be terminated. She believed the children need

11

consistency and that the mere possibility that she may be able to visit with the children if her rights are terminated is unacceptable. She testified she is willing to do whatever is necessary for her children and that she loves them. Although she did not believe that it was in the children's best interest that she assume their care at the time of the hearing, she did not believe that termination was in their best interest. She testified that she is willing to pay child support and abide by the terms of possession and access if named possessory conservator.

Leteff opined that the children were in immediate danger in appellant's home. She expressed concern that the children were left alone without proper resources, one child had made an outcry against the other, and appellant had tested positive on a field drug test. Mandel testified that appellant endangered the children by leaving them home alone because anything can happen when children are left alone. Evans admitted that appellant appeared willing and able to do what is necessary for the children and had recently demonstrated stability regarding her sobriety, employment, and individual counseling. However, Evans testified that, to recommend reunification, she needed to see a long-term pattern of stability. She credited appellant for doing well recently, but was concerned with appellant's pattern of criminal activity, psychiatric issues, drug possession, and involvement

with the judicial system. Evans also expressed concern that if appellant stopped taking her medication, it would have a detrimental effect on her parenting ability.

Evans admitted that termination is not the only option, as the trial court could enter a conservatorship order that ensured the children's protection and gave appellant visitation rights. She believed termination to be in the children's best interest because the children need a home that is stable, drug free, and crime free, has ample food and supervision, and has stable caregivers, which Evans did not believe appellant could provide. Evans doubted whether appellant would continue doing what is necessary once she is no longer under the Department's scrutiny. She opined that appellant has not proven her ability to maintain stability and sobriety for long periods of time and that her inability to do so would physically and emotionally harm the children, undermine her ability to meet their needs, and would place the children in physical or emotional danger. Mandel also recommended termination because she believed that for the children's long-term safety, they needed to be in a stable home environment in which they would have no fear of being taken again and they could have a relationship with appellant.

M.R.T. told the trial court that he wanted to continue living with his foster family, but that if he could not live with them, he would like to live with his aunt in Michigan. He gave no third choice. He told the trial court that he would like to be

13

able to visit with appellant. G.L.K. could not give the trial court his first choice, but identified appellant and his aunt in Michigan as the options. He too wanted to be able to visit with appellant.

The trial court terminated appellant's rights on grounds that appellant (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engage in conduct that endangers the children's physical or emotional well-being; and (3) failed to comply with the provisions of a court order that established the actions necessary for appellant to obtain return of the children. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O) (West 2014). The trial court also found that termination was in the children's best interest. *See id.* § 161.001(2).

Legal and Factual Sufficiency

In issues one through three, appellant contends the evidence is legally and factually insufficient to support the trial court's findings that termination is proper under Texas Family Code section 161.001(1)(D), (E), and (O). In issue four, appellant challenges the trial court's finding that termination is in the children's best interest. To challenge the factual sufficiency of the evidence supporting a jury finding, the appealing party must have first asserted the point in a motion for new

trial. Tex. R. Civ. P. 324(b)(2); *In the Interest of M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). To preserve a legal sufficiency challenge for appeal, the appealing party must have asserted the point by (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991).

The record does not indicate that appellant filed a proper motion or lodged a proper objection raising her sufficiency challenges. *See* Tex. R. Civ. P. 324(b)(2); *see also M.S.*, 115 S.W.3d at 547; *Cecil*, 804 S.W.2d at 510-11. "Appointed counsel's unexcused failure to preserve a valid sufficiency point for appellate review may constitute ineffective assistance of counsel in a termination case." *In the Interest of C.T.*, No. 09-11-00694-CV, 2012 Tex. App. LEXIS 2485, at *3 (Tex. App.—Beaumont Mar. 29, 2012, no pet.) (mem. op.). Appellant does not argue ineffective assistance of counsel, and counsel is not automatically ineffective for failing to preserve the issues. *See id.* If counsel could have reasonably believed the evidence to be sufficient, counsel's performance does not fall below an objective standard of reasonableness merely because the verdict was not challenged. *Id.*

15

Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id.*

Under factual sufficiency review, we must "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* We "consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient." *Id.*

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations

16

sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001; *see also J.L.*, 163 S.W.3d at 84. A judgment will be affirmed if the evidence supporting any one of the grounds is legally and factually sufficient and the evidence supporting the best interest finding is also legally and factually sufficient. *In the Interest of C.A.C.*, No. 09-10-00477-CV, 2011 Tex. App. LEXIS 3385, at *2 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.).

Section 161.001(1)(D) allows for termination if the trial court finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(1)(D). The "endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten his well-being." *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Regarding the children's best interest, we consider a non-exhaustive list of factors: (1) desires of the child; (2) emotional and physical needs

of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code. Ann. § 263.307(b) (West 2014).

A parent's conduct in the home, such as illegal drug use, can create an environment that endangers a child's physical and emotional well-being. *In the Interest of R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied); *In the Interest of J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). In this case, the trial court heard evidence that appellant has a history of abusing illegal and prescription drugs, such conduct occurred in the children's presence, at least G.L.K. was aware of appellant's drug use, and appellant has been arrested for drug-related offenses. The trial court also heard evidence that appellant had been diagnosed with mental disorders, spent time in a psychiatric hospital, and expressed suicidal and paranoid ideations. The trial court could consider

appellant's mental state, including suicidal threats, when determining whether the children were endangered. *See R.W.*, 129 S.W.3d at 739.

Additionally, the trial court heard evidence that appellant has a history with the Department, including a prior removal, has been arrested on several occasions, exposed her children to a convicted sex offender, had unhealthy and at times abusive relationships, and had lived in several locations from the time of the children's removal until the start of the trial. The State presented testimony that appellant left the children home without supervision and proper resources, even after E.A.M. claimed that she was molested by M.R.T. Conduct subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *R.W.*, 129 S.W.3d at 739.

The trial court could reasonably conclude that appellant's conduct created an environment that endangers the children's physical and emotional well-being and could infer from this past endangering conduct that similar conduct would recur if the children were returned to appellant. *See In the Interest of M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.); *see also J.T.G.*, 121 S.W.3d at 125. The trial court could reasonably have formed a firm belief or conviction that appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional

19

well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(D). We overrule issue one and need not address issues two and three challenging termination pursuant to section 161.001(E) and (O). *See C.A.C.*, 2011 Tex. App. LEXIS 3385, at *2; *see also* Tex. R. App. P. 47.1.

The evidence also supports the trial court's finding that termination is in the children's best interest. According to the record, M.R.T. claimed to have been sexually abused and he struggled with bed wetting, behavioral problems, and suicidal thoughts, such that he had to be hospitalized. G.L.K. was withdrawn and struggled to make friends. E.A.M. sucked her thumb and struggled with speech problems. The trial court heard evidence that the children have improved in their current placements and are doing well.

The Department planned to place M.R.T. and G.L.K. with their maternal aunt in Michigan and heard evidence that the two children were excited about this prospect. The Department planned to have E.A.M. adopted by her paternal aunt and the trial court heard testimony that E.A.M. wanted to remain with her aunt. The record demonstrates that the children desired to maintain a relationship with appellant and that maintaining a relationship with appellant is both in the children's best interest and possible with relative adoptions.

20

J.K., appellant, and R.G. did not believe that termination was in the children's best interest. However, J.K. and appellant both testified that appellant was not yet ready to assume responsibility for the children's care. Moreover, Lee testified that appellant is on the road to being able to care for the children and that behavioral therapy is a long process. Evans, Leteff, and Mandel believed termination to be in the children's best interest because of appellant's criminal history, substance abuse, instability, and failure to adequately supervise the children. When asked with whom they wanted to live, M.R.T. and G.L.K. did not identify appellant as a choice.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tex. Fam. Code Ann. § 263.307(a) (West 2014). As the sole judge of the witnesses' credibility and the weight to be given their testimony, the trial could reasonably conclude that appellant was unable to provide such an environment for the children. The trial court could reasonably have formed a firm belief or conviction that termination of appellant's parental rights was in the children's best interest. *See id.* §§ 161.001(2), 263.307(b); *see also J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72. We conclude that the Department established, by clear and convincing evidence, that appellant committed the predicate act enumerated in section 161.001(1)(D) and that

21

termination is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001.

We overrule issue four and affirm the trial court's judgment.

     AFFIRMED.

_____

STEVE McKEITHEN

Chief Justice

Submitted on October 23, 2014
Opinion Delivered December 11, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.

22